IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | Crim. No. CCB-06-478 |
| | * | |
| KEVIN MILLER | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM**

Kevin Miller is a federal prisoner who is serving a 262-month sentence for drug trafficking. Miller has served 150 months of that sentence. Now pending is Miller's motion for sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) (the "compassionate release" statute), based on his particular vulnerability to COVID-19 and existence of a COVID-19 outbreak at FCI Forrest Medium, where Miller is incarcerated. (ECF 422). The government opposes the motion. (ECF 431), and Miller has replied, (ECF 432).[1]

For the reasons explained below, the motion will be granted, and Miller's sentence reduced to time served plus 14 days, followed by a six-year term of supervised release of which the first six months will be served on home confinement.

**BACKGROUND**

Following a jury trial, Miller was convicted of one count of conspiracy to distribute and possess with intent to distribute heroin, in violation of 21 U.S.C. § 846. (ECF 209 (Jury Verdict); ECF 230 (Amended Judgment)). Miller was sentenced to 262 months' incarceration, followed by a six-year term of supervised release. (ECF 230). Miller's sentence was at the low end of his guidelines range (262 to 327 months), which was driven by his status as a career offender.

---

[1] Defense counsel filed a supplement providing updates on the current COVID-19 outbreak at FCI Forrest City Medium. (ECF 433). The government also filed supplemental correspondence asking that if Miller is granted compassionate release, he be required to complete a 14-day quarantine in the Bureau of Prisons. (ECF 434).

1

(Sentencing Hr'g Tr. at 18:1–3, 29:3–8, ECF 236).

In December 2018, Congress enacted the First Step Act. *See* Pub. L. No. 115-391, 132 Stat. 5194. As part of the Act, Congress amended 18 U.S.C. § 3582(c), which empowers courts to reduce a term of imprisonment if "extraordinary and compelling reasons warrant such a reduction." *See* 18 U.S.C. § 3582(c)(1)(A)(i); Pub. L. 115-391, Title VI, § 603(b), Dec. 21, 2018, 132 Stat. 5239. Before the First Step Act, a court could review a prisoner's sentence pursuant to § 3582(c)(1)(A) only "upon motion of the Director of the Bureau of Prisons" ("BOP"). *Id*. But under the amended statute, a court may conduct such a review also "upon motion of the defendant," if the defendant has exhausted all administrative remedies to appeal the BOP's failure to bring a motion, or if 30 days has lapsed "from the receipt of such a request by the warden of the defendant's facility," whichever is earlier. *Id.* The court may authorize compassionate release if, after considering the factors set forth in 18 U.S.C. § 3553(a), the court finds that "extraordinary and compelling reasons" warrant it. *See* 18 U.S.C. § 3582(c)(1)(A)(i).

The government does not contest that Miller has exhausted his administrative remedies. (ECF 431 at 3 n.2 ("Because the warden of FCI Forrest City Medium has denied the Petitioner's request for compassionate release in this case . . . the Petitioner has satisfied the exhaustion requirement.")). Accordingly, the only issues are (1) whether "extraordinary and compelling reasons" warrant reduction of Miller's sentence and (2) whether the § 3553(a) factors weigh in favor of such a reduction.

## DISCUSSION

### I.  § 3553(a) factors

The compassionate release statute provides that, before reducing a defendant's sentence for "extraordinary and compelling reasons," the court must consider the factors set forth in 18 U.S.C. § 3553(a) "to the extent they are applicable." *See* 18 U.S.C. § 3582(c)(1)(A). This case is somewhat

unusual in that the government concedes that Miller does not pose a danger to the community, and that the § 3553(a) factors do not compel continued incarceration. (ECF 431 at 1). Accordingly, the court will first turn to the § 3553(a) factors.

With respect to Miller's personal history and characteristics, *see* § 3553(a)(1), (2)(C), the court notes that Miller was relatively young—between 22 and 23 years old—when he committed the offense of conviction. But the court also places great weight on Miller's post-sentencing conduct, which "provides the most up-to-date picture of [his] 'history and characteristics.'" *See Pepper v. United States*, 562 U.S. 476, 492 (2011) (citing 18 U.S.C. § 3553(a)(1)). In Miller's more than twelve years in the BOP, he has participated in a range of educational and vocational programming, has earned his GED, and has spent time tutoring other inmates. (*See* ECF 424-3 (BOP Progress Report); ECF 424-5, 424-6 (BOP Program Certificates)). According to a BOP staff member, "It is my belief that he is a changed and better man. I believe (if he is given the chance to be released) that he has transitioned to a person who will value family, freedom and his community." (ECF 424-3 at 1 (BOP Progress Report dated June 29, 2020)). Further, a Correctional Treatment Specialist stated that Miller "has proven himself reliable, trustworthy, honest, honorable, and to have good character." (*Id*. at 4).

The § 3553(a) factors also require the court to ensure that a sentence reflects the seriousness of the offense, promotes respect for the law, and affords adequate deterrence. *See* § 3553(a)(2)(A)–(B). As noted above, Miller's sentence of 262 months was driven by his status as a career offender, which the government agrees would no longer apply if Miller were sentenced today. (ECF 431 at 2).[2] If calculated today, Miller would likely face a guidelines range of 140–175 months.[3] The court

---

[2] Miller's status as a career offender was based on part on a Maryland conviction for second-degree assault. (ECF 424 at 10). The Fourth Circuit has since held that Maryland second-degree assault does not qualify as a "crime of violence" within the meaning of the career offender sentencing enhancement. *United States v. Royal*, 731 F.3d 333, 340–42 (4th Cir. 2013)

[3] This calculation is based not only on the removal of the career offender designation, but also on the 2014 Amendment to the Drug Quantity Table. (ECF 424 at 11). The government does not appear to contest that this would be the

thus finds that 150 months—the amount of time Miller has already served—is a sentence that reflects the seriousness of the offense, promotes respect for the law, and affords adequate deterrence.

Accordingly, the court finds that the balance of the § 3553(a) factors weighs in favor of granting compassionate release.

## II. "Extraordinary and compelling reasons"

The court next considers whether Miller has presented an "extraordinary and compelling reason" for compassionate release. Under 28 U.S.C. § 994(t), the United States Sentencing Commission is responsible for defining "what should be considered extraordinary and compelling reasons for sentence reduction" under § 3582(c)(1)(A). According to the Commission's Policy Statement, "extraordinary and compelling reasons" exist where (A) the defendant is suffering from a terminal or serious medical condition; (B) the defendant is over 65 years old, has failing health, and has served at least ten years or 75 percent of his sentence, whichever is less; (C) the caregiver of the defendant's minor child dies or becomes incapacitated, or the defendant's spouse or partner becomes incapacitated and the defendant is the only available caregiver; or (D) "other reasons" as determined by the BOP. *See* U.S.S.G. §1B1.13 cmt. n.1(A)–(D). The BOP criteria for "other reasons" justifying a sentence reduction are set forth in Program Statement 5050.50 ("Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 3582 and 4205(g)"). As this court and others have held, however, the court possesses independent discretion—guided, but not bound by, Sentencing Commission and BOP criteria—to determine whether there are "extraordinary and compelling reasons" to reduce a sentence. *See United States v. Decator*, --- F. Supp. 3d ----, 2020 WL 1676219, at *3 (D. Md. Apr. 6, 2020) (citing cases).[4]

---

appropriate guidelines calculation today.
[4] The court's independent discretion stems from the First Step Act of 2018, which, *inter alia*, amended 18 U.S.C. § 3582(c) with the stated goal of "increasing the use and transparency of compassionate release." *See* First Step Act §

4

Miller asserts he is eligible for compassionate release on the basis of underlying conditions (cardiac arrythmia, atrial fibrillation, prediabetes, and a possibly cancerous cyst) that increase his risk of serious illness related to COVID-19. (ECF 424 at 2). The Centers for Disease Control ("CDC") has issued guidance on underlying conditions that increase an individual's vulnerability to COVID-19. *See Coronavirus Disease 2019 (COVID-19): People with Certain Medical Conditions*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (updated July 17, 2020). The CDC distinguishes between those conditions where someone "[is] at increased risk" (e.g., obesity), and those where someone "might be at an increased risk" (e.g., asthma). *Id*. "Serious heart conditions" are in the former group. *Id*.

The government contends that Miller's underlying health conditions are not serious enough to rise to the level of an "extraordinary and compelling" reason for a sentence reduction. (ECF 431 at 5–6). This is not, however, obvious to the court. Miller's medical records include references to his arrhythmia and possible cardiomegaly (i.e. enlarged heart), and copies of multiple EKG reports. (*See* ECF 424-1 at 6–7, 34–37 (Medical Records); *see also* ECF 432 (discussion of scientific research on arrythmia and COVID-19)). While the CDC provides examples of "serious heart conditions" that increase an individual's risk of severe illness related to COVID-19, the list is non-exhaustive. *See People with Certain Medical Conditions*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html ("Serious heart conditions, *such as* heart failure, coronary artery disease, or cardiomyopathies" (emphasis added)). Below the listed examples of "serious heart conditions," a link to "[l]earn more about serious heart conditions" navigates to another CDC page, which states that "[a]rrhythmias can be serious." (*See id*.).

---

603(b), Pub. L. No. 115-391, 132 Stat. 5194; *see also Decator*, 2020 WL 1676219, at *1–3 (explaining Policy Statement § 1B1.13's partial inconsistency with the First Step Act amendments to § 3582(c)).

5

Compounding the risk to Miller is the mere fact of his incarceration. The CDC has warned that once introduced, COVID-19 may spread more quickly in correctional facilities relative to other environments. *See Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/community/correction-detention/guidance-correctional-detention.html (updated July 14, 2020); *see also Coreas v. Bounds*, ---F. Supp. 3d ----, 2020 WL 1663133, at *2 (D. Md. Apr. 3, 2020) ("Prisons, jails, and detention centers are especially vulnerable to outbreaks of COVID-19."). This is due in part to the close living arrangements of detainees, which impede social distancing efforts, and also because many facilities limit access to soap and paper towels, and prohibit alcohol-based hand sanitizers. *Interim Guidance*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/community/correction-detention/guidance-correctional-detention.html; *see also Coreas*, 2020 WL 1663133, at *2. BOP data confirm that FCI Forrest City Medium is currently experiencing an outbreak of COVID-19. *See COVID-19 Coronavirus: COVID-19 Cases*, BOP, https://www.bop.gov/coronavirus/ (indicating 24 inmate and 11 staff cases of COVID-19 as of August 13, 2020). It is clear that COVID-19 cases at FCI Forrest City Medium are increasing quickly. When Miller filed his motion for compassionate release, only five inmates and nine staff had tested positive. (ECF 432 at 5). By the time he filed the Reply, there were 19 active cases. (*Id.*). In a supplement filed one week after the Reply, defense counsel noted that that there were 20 active cases, five cases where inmates had recovered, and 360 pending COVID-19 tests among the inmate population. (ECF 433). Moreover, FCI Forrest City Low (on the same compound) has even more active cases. (*Id.*); *see also COVID-19 Cases*, BOP, https://www.bop.gov/coronavirus/.

Accordingly, the court finds that Miller's serious heart condition and the current COVID-19 outbreak at FCI Forrest City Medium, considered in light of the government's agreement that the § 3553(a) factors do not compel Miller's continued incarceration, together comprise an extraordinary

6

and compelling reason for a sentence reduction.

## CONCLUSION

For the foregoing reasons, Miller's motion for compassionate release will be granted, and his sentence will be reduced to time served plus fourteen days, followed by a six-year term of supervised release. The BOP will ensure that Miller is appropriately quarantined for 14 days at FCI Forrest Medium prior to release.

To ensure supervised reentry to the community consistent with public safety, the first six months of supervised release will be served on home confinement. For the first 14 days, Miller will remain self-quarantined at the residence approved by U.S. Probation, and will not leave that residence except for medical or other emergencies. For the remainder of the six-month period, Miller will not leave the residence approved by Probation except for activities approved in advance by Probation. All other terms and conditions of supervised release to which Miller was originally sentenced will remain in place, with the added condition that he will be required to comply with all directives of federal, state, and local governments related to public health issues, including COVID-19. A separate order follows.

| | |
|---|---|
| 8/13/20 | /S/ |
| Date | Catherine C. Blake<br>United States District Judge |